parties are not nominatively the same in the proceedings in both cases, this being in rem, the former in personam; that the issue tendered by the plea is partly en pais and in part to this court (Betts, Adm. 48), and that the particulars of the former action are not alleged in the plea.

The general principle governing pleas or exceptions in admiralty practice is that they must set forth the matter of defence in perspicuous and definite terms, and it is in no way necessary they should embody the formalities which obtain in common law pleas, or even those used in chancery. 2 Browne, Civ. Law, 110; Dunl. Adm. Prac. 196, 197; Betts, Adm. 48. The gist of the plea is, that the present claimants brought their action on this charter-party against the libellant, averring full performance of its engagements on their part; that the libellant contested the action, and the court, on the pleadings and proofs, decreed in favor of the claimants, and that the libellant now seeks to bring the same matters in controversy in this suit.

This defence is sufficient in its material point—the identity of the cause of action in this and the former suit. The substitution in this of the vessel for the owners does not constitute a distinct cause of action. The vessel being chargeable in admiralty with the responsibilities of her owners, takes, also, all their legal privileges and exemptions in respect to the charter-party, and it is substantially sufficient, in its frame, it not being necessary to the validity of the bar that more of the former pleadings be rehearsed than is here set forth. To do so would load the files to no useful end, and the rules of court inhibit all useless prolixities in referring to antecedent pleadings in a cause with a view to bring a point under the consideration of the court which may be material in a new proceeding. Rule 7. The exception to the plea is accordingly overruled, with costs, with leave to the libellant to reply to the plea within ten days.

Ordered and adjudged that the exception filed by the libellant to the plea of the respondents of a former trial and decree upon the subject matter of the suit be overruled, with costs to be taxed, the libel of the libellant be decreed barred and be dismissed, with costs to be taxed, unless the libellant shall elect to reply to said plea; and in that case, that he have leave to file a replication thereto within ten days, on payment of the costs created by such exception, to be taxed.

## Case No. 10,060.

### The NAYADE.

[See Case No. 7,046.]

NAYADE, The (INGRAHAM v.). See Case No. 7,046.

## Case No. 10,061.

### NAYLOR et al. v. BALTZELL et al.

### [Taney, 55.] [1]

Circuit Court, D. Maryland. Nov. Term, 1841.

CARRIERS—CONTRACT—LEX CONTRACTUS—BILL OF LADING—SHIPPING—POWER OF MASTER TO BIND —BOTTOMRY BOND — SALE OF CARGO.

1. The ancient common law in relation to carriers is, undoubtedly, in force in Maryland, but there is no principle of jurisprudence upon which the court can expound a contract by the laws of that state, if it was not made there, nor was any part of it to be performed there.

2. The law of the domicil of the party does not govern the contract, nor determine his rights or obligation; they depend upon the law of the place where it was made, or where it was to be executed.

[Cited in Balfour v. Wilkins, Case No. 807.]
[Cited in Snashall v. Metropolitan R. Co., 19 D. C. 400. Cited in brief in Talbott v. Merchants' Despatch Transportation Co., 41 Iowa, 248.]

3. The master has a right to contract for the employment of the vessel, under circumstances of necessity, and the owners will be bound by it; but this right is derived from the maritime code, which is founded on the general usages and convenience of trade, and which has been adopted, to a certain extent, by all commercial nations.

[Cited in The Ole Oleson, 20 Fed. 387.]

4. The bill of lading is an instrument founded in the usages of trade, and not connected with any of the peculiar doctrines of the common law.

5. Where a vessel is injured by dangers of the seas, and is obliged to seek a port of distress, where she is found to be unable to proceed on her voyage, and the cargo is landed, the master becomes the agent of the cargo as well as the ship, and in that character, it is his duty to deal with the cargo, as a prudent and discreet owner would have done, if he had been on the spot at the time. He may transship it, and earn freight for his owners. If his own ship can be repaired in a reasonable time, he has a right to retain it until his own ship is ready, and, if necessary, may sell a part of the cargo, or hypothecate the whole, in order to obtain money for the necessary expenses of repairs; or he may abandon the voyage, and notify the owners of the cargo, of the disaster, and await their orders as to its future disposition.

6. As to the ship, the master may, in a foreign port, contract for repairs and supplies, and thereby bind the owners to the value of the ship and freight; or he may hypothecate the ship and freight, and thereby create a direct lien upon them for the security.

7. The authority of the master is limited to objects connected with the voyage, and if he transcends the prescribed limits, his acts become, in legal contemplation, mere nullities: and it is incumbent on the creditor to prove the actual existence of the necessity of those things which give rise to his demand.

8. The owners are not personally responsible for debts contracted by the master for repairs, beyond the value of the ship and freight.

[Cited in Force v. Providence Washington Ins. Co., 35 Fed. 778; The Scotia, Id. 912.]

9. Nor can any terms inserted in a bottomry-bond, by the master, make them responsible for a greater amount.

10. A bottomry-bond executed by the master, hypothecating as well the cargo as the ship and freight, will not render the owners of the ship

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]